IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF: )
)
CELLULAR TELEPHONE ASSIGNED ) Case No. 1:20-mj-194
CALL NUMBER 256-337-0370 WITH )
INTERNATIONAL MOBILE SUBSCRIBER )
IDENTITY 310260957959563 ) **FILED UNDER SEAL**
(Target Cell Phone #1) )

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Bergren, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 256-337-0370 with International Mobile Subscriber Identity 310260957959563 and International Mobile Equipment Identifier 351851092424660 with no listed subscriber and utilized by Kenneth HUMPHREYS Jr. ("**Target Cell Phone #1**"), whose service provider is T-Mobile, a wireless telephone service provider whose legal compliance center is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. **Target Telephone #1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore include all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been since 1997. As such, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations of, among other things, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed as a Special Agent with DEA for the past 23 years. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received specialized training in the enforcement of laws concerning the activities of narcotics traffickers including four months of DEA basic training in Quantico, Virginia as well as periodic refresher training offered by the DEA. I am currently assigned to the Chattanooga Resident Office.

4. During my experiences and tenure as a narcotics investigator, I have investigated and participated in investigations of organized criminal groups violating federal drug trafficking laws. As part of my official duties, I have utilized and been involved with most traditional law enforcement techniques, including: visual surveillance, witness interviews, execution of search warrants, the use of cooperating witnesses, seizure of drug evidence, controlled purchases of drug evidence, court-authorized pen registers, court-authorized interceptions of wire communications, and undercover techniques. I have debriefed numerous cooperating defendants and confidential informants regarding the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity. I have personally participated in Title III wire intercept investigations, including investigations involving large-scale drug trafficking organizations and drug traffickers. I have received specialized training in conducting drug investigations and have attended training and lectures featuring government attorneys and law enforcement officials.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by Kenneth HUMPHREYS Jr. There is also probable cause to believe that the location information described in Attachment B and will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrants because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Kenneth HUMPHREYS Jr. and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

9. Since approximately January 2018, DEA Chattanooga, the Tennessee Bureau of Investigation (TBI), Chattanooga Police Department (CPD), Red Bank Police Department (RBPD), and the Hamilton County Sheriff's Office (HCSO) and other federal, state, and local law enforcement agencies have been involved in an investigation involving Kenneth HUMPHREYS Jr., and others. Through this investigation, HUMPHREYS was identified as a significant

distributor of heroin in Hamilton County, Tennessee. As detailed below, HUMPHREYS was identified as a source of supply and user of heroin.

10. On January 24, 2018, Special Agent (SA) William Wise and your Affiant met with a prior DEA Confidential Source and a Source of Information (SOI). SA Wise and your Affiant then interviewed the SOI regarding the SOI's knowledge of heroin traffickers in Chattanooga, Tennessee. During the interview, the SOI stated that the SOI had been recently supplied user quantities of heroin from "HUMP," subsequently identified by photograph as Kenneth HUMPHREYS Jr. (Alias: Kenneth HUMPHREY). According to the SOI, HUMPHREYS sold point (1/10th gram) quantities of heroin for $30.00 apiece. The heroin was described as being dark brown in color. HUMPHREYS also sold cocaine, pills, and methamphetamine. HUMPHREYS was described as a black male with burn marks on his neck and arms. The SOI related that HUMPHREYS was currently residing in Huntsville, Alabama, but was from Chattanooga, Tennessee. The SOI subsequently identified 560 Executive Drive N.W., Huntsville, Alabama, as HUMPHREYS' apartment building via Google maps. HUMPHREYS' apartment was described as being on the bottom row and the second or third apartment from the left. According to the SOI, the apartment's door is secured on the inside with a metal security bar. The SOI stated that the SOI had previously traveled to HUMPHREYS' residence in Alabama to obtain heroin. On one of those occasions, HUMPHREYS met an unknown person at a Wal-Mart store near his residence to obtain additional heroin. The SOI was introduced to HUMPHREYS through "OLD MAN MIKE," believed to be Michael WILLIAMS. The SOI was previously supplied by WILLIAMS but after meeting HUMPHREYS, he (HUMPHREYS) directed the SOI to deal directly with him. The SOI stated that HUMPHREYS drove a grey colored Chrysler 300 and rental Sports Utility Vehicles (SUVs). The SOI stated that the SOI had seen HUMPHREYS with a firearm on one occasion and

had observed HUMPHREYS to be in possession of multiple packages of heroin on several occasions.

11. The SOI stated that HUMPHREYS frequently travels from Alabama to Chattanooga to distribute heroin. The SOI related that HUMPHREYS would sometimes direct the SOI to other people to obtain heroin. The CS related that HUMPHREYS conceals his narcotics in a soap box or fan vent inside of the back right bedroom. Shortly after this interview, the SOI went to rehab and was unwilling to continue co-operation with law enforcement and law enforcement did not have other CS or SOI to provide information or make controlled purchases.

12. In February 2020, your Affiant learned that HUMPHREYS had been arrested on numerous state charges to include Possession of Controlled Substances (heroin, powder cocaine, crack cocaine and unknown pills) in Gurley, Alabama, after a traffic stop for speeding. Your Affiant spoke with the arresting officer, who later provided reports from this arrest. According to the reports, on November 14, 2019, HUMPHREYS was stopped for speeding and after talking with HUMPHREYS the officer was suspicious of other criminal activity. The officer asked for consent to search HUMPHREYS' vehicle to which HUMPHREYS declined. A K-9 was deployed and alerted to the presence of narcotics. At this point, HUMPHREYS spontaneously stated there might be some "weed" in a bag in the back of the vehicle. The officer located the marijuana and observed other narcotics in the bag to include, suspected cocaine and suspected oxycodone pills. HUMPHREYS was placed under arrest and his vehicle was towed to the police department for a more thorough search. A further search revealed suspected heroin, suspected crack cocaine, and suspected powder cocaine in the vehicle. HUMPHREYS was advised of his rights, waived them, and agreed to speak with law enforcement.

13. During the interview, HUMPHREYS advised that he was traveling to Knoxville, Tn., and Chattanooga, Tn., to sell the drugs that were found. HUMPHREYS advised that he makes this trip several times a month to sell the drugs but does not normally sell the crack cocaine, marijuana, or heroin with fentanyl. HUMPHREYS advised that he tested the heroin for fentanyl and that is why test strips were located in the car. HUMPHREYS was booked and charged on Alabama state charges and eventually bonded out.

14. On February 3, 2020, CPD Investigator Justin Headden and SA Chris Moon met with a CPD confidential informant in reference to information on Kenneth HUMPHREYS Jr. The confidential informant advised that HUMPHREYS was a known heroin and cocaine dealer that the informant had purchased heroin from in the past. The informant advised that HUMPHREYS was from Huntsville, Al., and that he traveled to Chattanooga, Tn., on weekends, rents hotel rooms, and sold drugs from the hotel rooms. The informant knew that HUMPHREYS had been recently arrested somewhere between Huntsville, Al., and Chattanooga, Tn., for drugs. The confidential informant advised that HUMPHREYS was currently staying at the Extended Stay, Chattanooga, Tn. The informant advised that HUMPHREYS drove a Chrysler 300 with Alabama license, different rental cars, and utilized telephone number **256-337-0370 (Target Cell Phone #1)**.

15. The informant was provided marked US Currency to conduct a controlled buy from HUMPHREYS. The informant was observed at the Extended Stay and going to the 2nd floor of the hotel. The informant had a brief conversation with HUMPHREYS in reference to purchasing heroin but HUMPHREYS advised that he did not currently have any and was waiting for his supply to come. The informant then left the location and advised Investigator Headden of the events that had occurred. The informant advised that HUMPHREYS was in Room 207 at the

hotel. The informant communicated with HUMPHREYS on **256-337-0370 (Target Cell Phone #1)** in reference to meeting to purchase drugs on several occasion during this operation.

16. Surveillance was setup at the location and specifically on Room 207. A 2015 BMW X6 with Tn. tag 8G82N7 was seen pulling into the target location driven by a white male and a black male passenger. The vehicle pulled around to the rear of the location and dropped off the black male passenger who then went up the stairs and into Room 207. The BMW then pulled out and left the location. A short time later, a 2004 Volkswagen with Tn. tag CHX988 was seen pulling into the location driven by a white female. The white female parked in the rear of the location and was seen going into Room 207 as well. The VW is registered to Farryn Sivley which matches the information received by the informant. Not long after this attempted controlled purchase this confidential informant stopped communicating with law enforcement and law enforcement was not able to conduct a controlled purchase of drugs.

17. On September 18, 2020, a concerned citizen advised TBI SA Lauren Moon that a Dodge Durango was possibly involved with selling pills to an African American male that frequented 1721 Citgo Avenue, Chattanooga, Tn. The concerned citizen sent SA Moon a photograph of a 2020 Ford Mustang with Alabama Registration 47A5V31. The driver of this vehicle was described as an African American male in his mid-fifties. Additionally, the concerned citizen advised that this African American male frequented the address in what he/she believed to be various rental vehicles citing that she/he has observed several out of state registration plates. The Alabama registration returned to Enterprise Rentals out of Madison, Alabama. This agent conducted a records check through Enterprise Rentals and learned that Kenneth HUMPHREY/Kenneth HUMPHREEY rented this vehicle from Huntsville, Al., on September 17, 2020. After looking further at the rental information, SA Moon determined that

the renter was actually Kenneth HUMPHREYS Jr., based on the address provided to Enterprise being the same as HUMPHREYS and telephone number provided to Enterprise of **256-337-0370 Target Cell Phone #1**. SA Moon further discovered that HUMPHREYS had routinely rented vehicles from Enterprise since November 2019. The rental history indicated that the vehicles were rented for approximately three days at a time and HUMPREYS appeared to rent the vehicles approximately three times a month. SA Moon preserved the rental history for rentals associated with HUMPHREYS. The majority of the rentals have been conducted at the Huntsville International Airport Enterprise branch location.

18. On November 6, 2020, U.S. Magistrate Judge Christopher Steger issued search warrant for geolocation for telephone number Target Cell Phone #1, utilized by Kenneth HUMPHREYS, for a period of 30 days.

19. Since this search warrant was signed and executed your Affiant has observed via geolocation and physical surveillance that HUMPHREYS has traveled from Huntsville, Alabama, to Chattanooga, Tennessee, and returned three times. Each time staying in Chattanooga for two to four days and then returning to Huntsville. On two of these trips, HUMPHREYS traveled to the Atlanta, Georgia, area, for a brief period and then returned to Chattanooga. Your Affiant and other law enforcement surveilled HUMPHREYS from Huntsville, Alabama, to Chattanooga, Tennessee, to Calhoun, Georgia, and then broke off surveillance before HUMPHREYS arrived at his final destination and were unable to determine the exact location HUMPHREYS went to or any individuals that HUMPHREYS may have met with on these trips. On the next trip to the Atlanta, Georgia, area, the geolocation showed that HUMPHREYS went to a gas station for a brief period and then returned to Chattanooga. Your Affiant believed that HUMPHREYS is traveling to Atlanta to purchase drugs to distribute. While in Chattanooga, HUMHREYS has stayed at the

same hotel and spent a large portion of his time at 1700 Jackson Street, Apt B, which is a previously identified "trap" house.

20. Your Affiant believes that based upon the aforementioned probable cause, that **Kenneth HUMPHREYS Jr.** is using **Target Cell Phone #1** to facilitate his drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #1** through T-Mobile will allow investigators to locate the subject(s) utilizing the Target Telephones without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

*T-Mobile and Location Information*

21. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are

Page **9** of **12**

Case 1:20-mj-00194-CHS Document 5 Filed 12/04/20 Page 9 of 15 PageID #: 17

often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable

Page **10** of **12**

Case 1:20-mj-00194-CHS Document 5 Filed 12/04/20 Page 10 of 15 PageID #: 18

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant be sealed. These documents discuss an ongoing criminal

Page **11** of **12**

Case 1:20-mj-00194-CHS   Document 5   Filed 12/04/20   Page 11 of 15   PageID #: 19

investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Andrew Bergren
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on _December 4_, 2020

_____
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF: )
)
CELLULAR TELEPHONE ASSIGNED ) Case No. 1:20-mj-194
CALL NUMBER 256-337-0370 WITH )
INTERNATIONAL MOBILE SUBSCRIBER )
IDENTITY 310260957959563 ) **FILED UNDER SEAL**
(Target Cell Phone #1) )

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephones assigned call number **256-337-0370** with International Mobile Subscriber Identity 310260957959563 and International Mobile Equipment Identifier 351851092424660 **256-337-0370** with no subscriber and utilized by Kenneth HUMPHREYS Jr. ("**Target Cell Phone #1**"), whose service provider is T-MOBILE, a wireless telephone service provider whose legal compliance center is headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054

2. Records and information associated with the **Target Cell Phone#1 t**hat are within the possession, custody, or control of T-MOBILE**:** including information about the location of the cellular telephones if they are subsequently assigned a different call number.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF: )
)
CELLULAR TELEPHONE ASSIGNED ) Case No. 1:20-mj-194
CALL NUMBER 256-337-0370 WITH )
INTERNATIONAL MOBILE SUBSCRIBER )
IDENTITY 310260957959563 ) **FILED UNDER SEAL**
(Target Cell Phone #1) )
)

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #10** described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the **Target Cell Phone #1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile. T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone #1** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

Page **1** of **2**

Case 1:20-mj-00194-CHS   Document 5   Filed 12/04/20   Page 14 of 15   PageID #: 22

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II.     **Information to Be Seized by the Government**

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Kenneth Humphreys Jr. or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.